```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BRIDGET HABE,

                    Plaintiff,

       -against-                              MEMORANDUM & ORDER
                                              09-CV-1071(JS)(ETB)
333 BAYVILLE AVENUE RESTAURANT CORP.,

                    Defendant.
----------------------------------------X
APPEARANCES:
For Plaintiff:    Arthur H. Forman, Esq.
                  98-20 Metropolitan Ave.
                  Forest Hills, NY 11375

For Defendant:    Russell G. Tisman, Esq.
                  Christopher G. Gegwich, Esq.
                  Forchelli Curto Deegan Schwartz Mineo Cohn &
                    Terrana, LLP
                  330 Earle Ovington Blvd., Suite 1010
                  Uniondale, NY 11553
```

SEYBERT, District Judge:

Plaintiff Bridget Habe sued Defendants 333 Bayville Avenue Restaurant Corporation (the "Corporation") and its sole shareholder, James Scoroposki, for employment discrimination. Plaintiff has since discontinued her case against Scoroposki (Docket Entry 14), and the Corporation now moves for summary judgment. For the following reasons, this motion is DENIED.

BACKGROUND[1]

The Corporation owns and operates an upscale restaurant and catering facility at the Crescent Beach Club (the "Restaurant") overlooking the Long Island Sound in Bayville, New York. (Def. 56.1 Stmt. ¶ 1.) Plaintiff was hired as an Assistant Restaurant Manager in April 2001. (Pl. 56.1 Cntr-Stmt. ¶ 3.) She was promoted to Restaurant Manager in 2002 and served in that position until she was fired. As the Restaurant Manager, Plaintiff was responsible for the day-to-day operations of the Restaurant's "front of the house," meaning generally the operations of the Restaurant that occurred in the public eye. (See Def. 56.1 Stmt. ¶¶ 5-6.) Plaintiff reported to William Meis, the Restaurant's General Manager, and she was ultimately responsible to Scoroposki. (Id. ¶ 8.) Although he had no day-to-day responsibilities for the Restaurant, Scoroposki set the objectives and direction of the business and had the authority to fire Restaurant employees at will. (Id. ¶¶ 8-9.) Scoroposki and Meis viewed Plaintiff's initial performance as Restaurant Manager as satisfactory, and Plaintiff received annual raises and bonuses. (Id. ¶¶ 13-14.)

As late as February 28, 2006, Meis told Plaintiff that her performance had been excellent and that she was approved for

---

[1] To the extent that the parties dispute the facts underlying the following discussion, the Court accepts Plaintiff's version as true for the purposes of this motion.

another annual raise. (Pl. 56.1 Cntr-Stmt. ¶ 16; Habe Dep. 83-84.) During that same conversation, Plaintiff told Meis that she was pregnant. (Habe Dep. at 131; see Meis Dep. 83.) Meis immediately informed Scoroposki (Scoroposki Dep. 33), and Plaintiff told Scoroposki directly about her pregnancy on March 1, 2006 (Def. 56.1 Stmt. ¶ 82). Plaintiff was fired on March 11, 2006, ten days later. (Id. ¶ 89.) Plaintiff had never received any written warnings about her performance (Pl. 56.1 Cntr-Stmt. ¶ 27), unlike other Restaurant employees who had been fired. Peter Bruce, Plaintiff's predecessor as Restaurant Manager, received at least two written warnings before being fired for misconduct (Meis Dep. 35-36), and one of her successors received one or two written warnings before being fired for sexual harassment (id. at 118-19). Meis testified that it was his policy to give employees one or two written warnings before terminating them. (Id.)

In defense, the Corporation maintains that, beginning in 2005, Scoroposki became dissatisfied with Plaintiff's performance for reasons that included her arriving to meetings late and unprepared and her falling short of the Restaurant's sales goals. (See, e.g., Def. 56.1 Stmt. ¶¶ 16, 21). According to the Corporation, Scoroposki's frustration with Plaintiff hit its boiling point on Valentine's Day 2006, the Restaurant's most important day of the off-season. According to Scoroposki,

3

Plaintiff arrived late and did not prepare the facility for a smoothly-functioning evening. (See, e.g., Def. 56.1 Stmt. ¶¶ 40-58.) Although Scoroposki had considered firing Plaintiff throughout the fall of 2005, the Valentine's Day incident was what finally convinced him that he needed a new Restaurant Manager. (Scoroposki Dep. 33.) He had several conversations with Meis between February 21 (the day Meis returned from a vacation) and February 23. (Def. 56.1 Stmt. ¶ 72.) He claims that he told Meis to fire Plaintiff during a call on February 23, before he learned that Plaintiff was pregnant. (Id. ¶¶ 73, 75.) Plaintiff disputes Defendant's account because, among other things, she was told that her work was excellent as late as February 2006 and Meis spoke with Defendant's controller to arrange Plaintiff's raise after Meis returned from vacation. (Pl. 56.1 Cntr-Stmt. ¶ 29.)

## DISCUSSION

Plaintiff asserts claims for unlawful termination under Title VII and the New York State Human Rights Law, N.Y. EXEC. LAW § 290 et seq. (the "NYSHRL"). Defendant argues that Plaintiff cannot show that she was wrongfully terminated and that, even if she could, she is not entitled to front or back pay because she did not conduct a reasonable search for new employment. (Def. Br. 13, 17.) The Court will discuss the

4

standard governing summary judgment motions and then turn to the parties' arguments.

I. Summary Judgment Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with

5

specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514-15, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II. Defendant is not Entitled to Summary Judgment

Questions of material fact preclude summary judgment in this case.

A. Plaintiff may have been Wrongfully Terminated

Because there is no direct evidence of discrimination, Plaintiff's claims that she was wrongfully fired because of her pregnancy are governed by the familiar McDonnell Douglas burden-shifting framework. E.g., DeMarco v. CooperVision, Inc., 369 F. App'x 254, 255 (2d Cir. 2010) (noting that McDonnell Douglas governs pregnancy discrimination claims under both Title VII and the NYSHRL) (citing McDonnell Douglas v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In this analysis, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Kerzer v. Kingly Mfg., 156 F.3d 396, 401 (2d Cir. 1998). If she satisfies this

6

requirement, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its action. Id. Then, the burden shifts back to Plaintiff to offer evidence that Defendant's stated reason was merely a pretext for unlawful discrimination. Id.

Plaintiff has established a prima facie case of pregnancy discrimination. "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." Id. (quoting Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995)). "Alternatively, a plaintiff may establish the fourth element of a prima facie case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Id. With respect to the second element, the question is whether Plaintiff was qualified for her job in that she had "the basic skills necessary." DeMarco v. Stony Brook Clinical Practice Mgmt. Plan, 348 F. App'x 651, 653 (2d Cir. 2009). Here, there is no serious question that Plaintiff (i) was a member of a protected class; (ii) had the basic skills required to be the Restaurant Manager, a position that she filled for four years; (iii) was fired; and (iv) was replaced by

Steven Kelban, a non-pregnant employee. See Spadaro v. McKeon, 693 F. Supp. 2d 183, 190 (N.D.N.Y. 2010) (evidence that plaintiff was replaced with non-pregnant, male employee was sufficient to establish prima facie case of pregnancy discrimination). Thus, Plaintiff has established a prima facie case of discrimination.

"[O]nce a plaintiff establishes a prima facie case of pregnancy discrimination, the burden is on the defendant to produce evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Kerzer, 156 F.3d at 402 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). Defendant has done so here; an employee's poor performance is a legitimate, nondiscriminatory reason to discharge that employee. Lambert v. McCann Erickson, 543 F. Supp. 2d 265, 279 (S.D.N.Y. 2008).

At this point, the burden shifts back to Plaintiff, who must offer evidence sufficient to convince a reasonable jury that Defendant's stated reason was merely a pretext for unlawful discrimination. Kerzer, 156 F.3d at 401. "An employer's reason for termination cannot be proved to be a pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Id. (quoting Hicks, 509 U.S. at 515). "In the summary judgment

context, this means 'that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.'" Id. (quoting Gallo v. Prudential Residential Svcs., Ltd. Partnership, 22 F.3d 1219, 1225 (2d Cir. 1994)).

Plaintiff has proffered enough circumstantial evidence of discrimination to survive summary judgment. Read in Plaintiff's favor, the record shows that Plaintiff was fired shortly after she told Meis and Scoroposki that she was pregnant despite a recent favorable performance review and in contravention of a policy whereby underperforming employees were given at least one written warning before they were terminated. Defendant maintains that Scoroposki had already decided to fire Plaintiff by the time he learned that she was pregnant and that this precludes any finding that he discriminated against her. (Def. Br. 13-14). Defendant concedes, however, that Scoroposki learned of Plaintiff's pregnancy before Plaintiff was actually fired (Def. 56.1 Stmt. ¶ 78), and, in the Court's view, Plaintiff has offered enough evidence to raise a genuine question whether Scoroposki decided to fire Plaintiff before or after he learned that she was pregnant. Accordingly,

9

Defendant's motion for summary judgment on Plaintiff's wrongful discharge claims is denied.

B. Plaintiff's Damages

Defendant also moves for a summary determination that Plaintiff failed to mitigate her damages by conducting a reasonable search for substitute employment and, in the alternative, that any award of back pay must reflect the eventual elimination of Plaintiff's position. (Def. Br. 17-24.) Defendant can reduce Plaintiff's entitlement to backpay by showing "(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." Hawkins v. 1115 Legal Svc. Care, 163 F.3d 684, 695 (2d Cir. 1998). If Plaintiff made no reasonable efforts to pursue employment, Defendant would be relieved of its burden to show that suitable replacement work was available. Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998). An employee's duty to mitigate is not an onerous burden. Hawkins, 163 F.3d at 695. It is context-specific and "entails a consideration of such factors as the individual characteristics of the claimant and the job market." Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997) (internal quotation marks omitted). Whether she has made reasonably diligent efforts to secure another job is usually a question for the jury. Hawkins, 163 F.3d at 696.

Having reviewed the relevant portions of the record, the Court concludes that Defendant has not satisfied its burden of establishing as a matter of law that Plaintiff failed to conduct a reasonably diligent job search in light of her individual characteristics. For example, Defendant argues that Plaintiff essentially removed herself from the job market between June and September 2007 because the documentation of her job search includes only classified ads that were published during that period. (Def. Br. 18.) Defendant cites <u>Booker v. Taylor Milk Co., Inc.</u>, 64 F.3d 860, 865 (3d Cir. 1995), for the proposition that "constant and continuing review of want ads insufficient to constitute mitigation." (Def. Br. 18.) That case, however, is distinguishable because, as Defendant concedes (Def. 56.1 Stmt. ¶ 115.), Plaintiff testified at her deposition that she actually applied for some of these positions, even if her record-keeping was not perfect (Pl. Dep. 229-30). Accordingly, Defendant is not entitled to a summary determination that Plaintiff did not mitigate her damages.

Defendant also asks that, to the extent that Plaintiff prevails at trial, any backpay award reflect that Defendant eventually eliminated the full-time restaurant manager position in favor of an arrangement whereby it employs someone who works as a restaurant manager during the busy season and as a part-time server during the off-season. Defendant is correct that

backpay awards should generally take into account an employer's legitimate, nondiscriminatory decision to eliminate a position or, as in this case, reduce the number of hours it employs someone in a particular position. See LARSON ON EMPLOYMENT DISCRIMINATION § 92.06 (2011). The Court declines to make a formal ruling on this issue at this time, however, because the record is not clear when Defendant made this change. (See Def. 56.1 Stmt. ¶ 105 (not specifying a date at which Defendant switched to a part-time restaurant manager).)

## CONCLUSION

For the foregoing reasons, Defendant's motion (Docket Entry 39) is DENIED in its entirety.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: January  12 , 2012
       Central Islip, New York